IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MARY J. HARPOLE,

Petitioner,

v.

MICHAEL ASTRUE, Commissioner of Social Security Administration,

Respondent.

Case No. CV 08-521-N-CWD

**MEMORANDUM DECISION AND ORDER**

## Introduction

Currently pending before the Court for its consideration is the Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed by Petitioner Mary J. Harpole ("Petitioner") on December 3, 2008. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR").[1] For the reasons that follow, the Court will remand the decision of the Commissioner.

**I.**

[1] Petitioner filed a Motion for Summary Judgment (Docket No. 10). According to the Procedural Order (Docket No. 2), a motion for summary judgment is not required. Therefore, the Court treated Petitioner's motion and accompanying memorandum as a brief in support of the Petition for Review.

**Procedural and Factual History**

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on July 21, 2004, alleging disability due to headaches and chronic pain. Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) John R. Hood held a hearing on December 5, 2006, taking testimony from Petitioner, her husband Charles Harpole, and vocational expert K. Diane Kramer. (AR 424-460.) ALJ Hood did not, however, issue a decision, and a second hearing was held by ALJ Richard Say on June 6, 2007. In addition to the testimony from the first hearing, ALJ Say heard testimony from Petitioner and vocational expert Debra LaPoint. (AR 462-430.) ALJ Say issued a decision finding Petitioner not disabled on September 18, 2007. (AR 14-31.)

Petitioner filed a timely appeal to the Appeals Council which denied her request for review, making the ALJ's decision the final decision of the Commissioner. (AR 6-8.) Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the June 2007 hearing, Petitioner was fifty-one years of age. She completed the ninth grade, and obtained a GED. Her past relevant work includes work as an industrial cleaner, housekeeper/cleaner, cashier, stock clerk and security guard.

**II.**
**Sequential Process**

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had

not engaged in substantial gainful activity since her alleged onset date. At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's chronic back pain, headaches, dysthymic disorder, pain disorder, and low average intellectual functioning "severe" within the meaning of the Regulations. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was able to perform her past relevant work as a cashier and security guard.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Having found Petitioner not disabled at step four, the ALJ did not proceed to step five.

## III.
## Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that

she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an

ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner contends the ALJ erred at the fourth step of the sequential evaluation process by improperly rejecting Petitioner's testimony regarding her symptoms and limitations and by finding her subjective complaints not credible. By finding Petitioner not credible, Petitioner asserts that the ALJ improperly considered the opinion of the Vocational Expert based upon an RFC determination that did not include all of Petitioner's limitations. Petitioner also maintains that the ALJ erred by disregarding lay witness testimony, and by rejecting one of the examining psychologist's opinions while adopting the other examining psychologist's opinions, which were substantially similar. The Court will address each of these arguments in turn.

### A. Petitioner's Credibility

Petitioner argues that the ALJ erred in rejecting her subjective complaints and testimony about her pain and other physical and cognitive limitations. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Meanel*, 172 F.3d at 1113. If a claimant produces objective medical evidence of an underlying impairment,

an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence to fully corroborate the alleged severity of the pain. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient, and the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Court reviews the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is sound.

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities,

claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ also may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

In this case, the record lacks substantial evidence to support the ALJ's finding that Petitioner was not fully credible. The ALJ concluded that Petitioner's testimony indicated she was incapacitated by pain, but that the record did not support such a degree of disability. (AR 29.) The ALJ cited to Petitioner's reports of her daily activities to both Drs. Gardner and Ehlert, as well as her self reports, noting that the reports of her activities indicated much more activity than indicated in her testimony. (AR 29.) However, upon examination of the same records cited by the ALJ, the Court finds Petitioner's self reports reflect that she does not engage in much activity at all. She plays with her animals for short periods of time; she may perform some household chores such as laundry and preparing easy meals, but her family, including her husband, generally does most of the housework; and she may drive the 1/4 mile to her parent's home. (AR 120.) Petitioner indicated that during these activities, she rests often, lays down, naps, and feels pain throughout the day. (AR 120, 138-139, 156-157.) She documented her sleep as restless and punctuated by pain and/or headaches. (AR 156-157). She also documented in her diary that she often declined to visit with her parents, go on drives with her husband, or participate in her grandchildren's activities because of pain. (AR 157-159.)

Petitioner's reports to psychologists Ehlert and Gardner of a typical day and activities

were consistent with her self reports. (AR 292, 389.) Neither Dr. Ehlert nor Dr. Gardner found Petitioner to be malingering; instead, both diagnosed "pain disorder," and both opined that, while she may "mildly embellish" her pain (in the words of Dr. Gardner), she was truthful. (AR 292-293; 392-395.) The physical RFC assessment completed by the SSA Medical Consultant also considered Petitioner's allegations concerning the severity of her physical symptoms "credible," despite a lack of objective medical findings, and noted tenderness in Petitioner's thoracic area, paraspinal muscles, and sacrum consistent with Petitioner's self-reports of her pain. (AR 201-208.) The record taken as a whole does not support the ALJ's proffered reason for rejecting Petitioner's subjective reports of pain.

Moreover, the ALJ did not discuss specifically Petitioner's activity level during the day, noting only that she reported more activity to her care providers than she did during the hearing. When examining a claimant's daily activities, the ALJ may reject a claimant's symptom testimony "if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. . . .[However, t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) (internal citations omitted). The ALJ therefore erred by failing to examine Petitioner's daily activities, and determine whether those activities would be transferrable to a work setting.

The ALJ also relied upon a lack of objective medical evidence that would cause Petitioner such a degree of pain in her back, knee, and hips, noting normal x-rays, or x-rays

showing only minimal osteoarthritic changes. (AR 29.) A claimant who alleges disability based on subjective symptoms must produce objective medical evidence of an impairment that could reasonably be expected to (but not that it did in fact) produce some degree of pain symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-1282 (9th Cir. 1996). The claimant need not, however, produce objective evidence of the causal relationship between the medically determinable impairment and her symptoms. *Smolen*, 80 F.3d at 1881.

In this case, the AJL disregarded the evidence documented in Petitioner's medical records that she consistently complained of pain in her knee, thoracic chest area, hips and back, and sought treatment on a frequent basis over several years for her pain. In 2001, her chronic pain complaints in her thoracic chest area and treatment with narcotic pain medication and steroid injections were documented. (AR 190, 224.) While no hernia or other abnormality was noted in 2001, Petitioner's physician noted tenderness upon examination. (AR 222.) Physicians suspected costochondritis was the cause of her pain in 2001. (AR 224.) Doctors diagnosed osteoarthritis in her knees in 2000, with continued complaints and treatment for knee pain in 2003 and 2004. (AR 219, 245, 251, 256.) Petitioner continued seeking treatment and reporting chronic pain in her thoracic lumbar spine and chest area throughout 2003 and 2004, and while physicians could not definitively identify the source of her pain, all noted that she had tenderness to palpitation in those areas. (AR 222, 224, 262, 265.) In 2007, her treating medical practitioner noted her history of multiple myalgias and arthralgias, diagnosing "fybromyalgia." (AR 417-418.)

The medical records as a whole do not support the ALJ's conclusion that Petitioner's physical examinations "were generally benign" and that her work-up for MS was "negative."

(AR 29.) The ALJ cited a lack of x-ray findings to support his conclusion that there was no objective medical evidence supporting an underlying impairment. However, Petitioner's treating physicians consistently noted tenderness upon palpitation in the areas Petitioner complained of pain despite minimal findings upon x-ray. Petitioner's physicians treated her for headaches, osteoarthritis, and costochondritis. Tests conducted in 2006 after an emergency room admission indicated an abnormal MRI with white lesions in the frontal lobe of her brain. (AR 281, 287.) Her abnormal MRI prompted additional testing for Multiple Sclerosis ("MS"), and while further tests indicated she did not definitively fit the diagnostic profile, such a diagnosis could "not be completely ruled out." (AR 306, 314-316.) A lumbar puncture was performed on April 12, 2006, and while markers for MS were not present, the test results were qualified by the finding that a "small percentage of patients with clinically definite MS" do not exhibit markers. (AR 316.) Petitioner's treatment records, therefore, contradict the ALJ's conclusion, and constitute objective medical evidence of underlying impairments that reasonably could be expected to produce Petitioner's subjective complaints of pain.

The ALJ also disregarded Petitioner's complaints of headaches, atrial flutter, and "spells," noting that Petitioner's records indicated these medical complaints were controlled or resolved, or in the case of her migraine headaches, that she did not follow through with her medications. (AR 29.) Upon closer examination of the record as a whole, however, the Court notes a long history of seizure complaints or "spells." In her medical records, Petitioner reported a seizure on April 16, 2001. (AR 228.) Petitioner's daughter described her mother's seizures to Petitioner's physician during a visit to the doctor on April 30, 1991. (AR 325.) On February 9, 2006, Petitioner was admitted to the emergency room after a possible seizure. (AR 280, 285-

286.) Upon admission to the emergency room, Petitioner was noted to have acute altered mental status, was unable to stand, unable to converse, and unable to function. (AR 285.) The ER report noted that Petitioner reported suffering from "spells" for "years." (AR 285.) On January 29, 2007, Petitioner again sought care for seizure activity, noting persistent muscle and facial jerking which was observed by her treating physician upon examination. (AR 369.)

At the hearing, Petitioner reported her "spells" included instances of twitching, and others that she had no memory of, including instances where she became incontinent. (AR 424-453.) Petitioner's husband corroborated Petitioner's history of seizure activity and the lack of any definitive diagnosis over the years despite continued follow up for the incidents. (AR 453.) Only one physician, Petitioner's cardiologist Dr. Cooke whom she consulted on April 9, 2007, noted no further spells or arrhythmic symptoms with medication at that time, but that if she had more spells, additional work-up was necessary. (AR 379.) At the hearing on June 7, 2007, Petitioner testified that she was having a few more seizures since her cardiology appointment in April 2007, and that the medicine was not working that well to control them. (AR 465.) Viewing the record as a whole, the note of one physician without further work-up does not constitute substantial evidence for rejecting Petitioner's complaints that she suffered from, and continues to suffer from, recurring seizures of unknown etiology.

Petitioner's headaches also are well documented in her medical records. The ALJ rejected Petitioner's complaints that she suffered from headaches "twice per week" because she "failed to follow through on medications." (AR 29.) The one medical record the ALJ cited notes that Petitioner sought treatment on January 2, 2006, for her migraines, and the physician's note stated that "she had at one time been offered treatment with prophylactic therapy and with

Imitrex, but never followed through with either of these." (AR 210.)

A failure to follow a prescribed treatment may be used as sufficient evidence to support a conclusion that a claimant is not credible in describing her symptoms about pain, and form the basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 637-638 (9th Cir. 2007). However, the record as a whole indicates Petitioner frequently sought treatment for her headaches, and followed through with prescribed medications.

For example, on October 21, 1980, Petitioner's records indicate she sought treatment for headaches, that she was taking Fiorinal with "good relief" but that headaches still reoccurred several times per week. (AR 213.) Her medication was changed to Inderal at that time. (AR 213.) On June 28, 1982, Petitioner requested a refill of her prescription for Fiorinal. (AR 214.) Treatment notes dated July 12, 2004, indicate Petitioner was experiencing headaches and that she tried Excedrin when she ran out of medication. (AR 261.) Her physician prescribed Amitriptyline for her general pain, including her headaches, at that time. (*Id.*) Treatment notes dated January 9, 2006, indicated she sought treatment for her headaches, that she tried Imitrex, and that she had one refill left. (AR 275.) On February 20, 2006, treatment notes indicate she continued to complain of headaches, that she was taking Nortriptyline to treat them, and noted improvement in her headache symptoms. (AR 331.)

On March 20, 2006, the prescription for Nortriptyline was refilled, but Petitioner reported worsening of her headache symptoms. (AR 332, 361.) On April 17, 2006, May 22, 2006, July 24, 2006, August 21, 2006, October 2, 2006, and November 20, 2006, Petitioner again sought treatment and medication refills for her headaches. (AR 333-337; 367.) On January 24, 2007, Dr. Kofman from Disability Services examined Petitioner, and at that time Petitioner reported

that she suffered from migraines once a month as well as tension headaches on a more frequent basis. (AR 346.) Petitioner's husband testified that Petitioner suffered from headaches once a week, with pain lasting one day or more, requiring her to lie down and rest. (AR 436.) Based upon the record as a whole, the reason given by the ALJ for rejecting Petitioner's complaints of frequent headaches is not supported by substantial evidence.

As for her psychological limitations, the ALJ disregarded any impairment due to Petitioner's psychological complaints of "intrusive thoughts regarding a childhood incident," because there was "no longitudinal history of any psychological diagnosis or treatment" until Petitioner's attorney provided a psychological evaluation by Dr. Ehlert in March of 2006. (AR 29.) The ALJ also discredited any disability due to Petitioner's depression, noting that antidepressants were "controlling her depression well." (AR 29.) In March of 2006, Dr. Ehlert diagnosed Petitioner as suffering from dysthymic disorder. (AR 220-300.) Dr. Gardner arrived at the same diagnosis sixteen months later in July of 2007. (AR 385-395.) Medical records indicate that, as early as November 16, 2000, Petitioner was diagnosed with adjustment disorder. (AR 220.) She was treated with antidepressant medication. While the ALJ is permitted to consider lack of treatment in his credibility determination, the Court notes that Petitioner has a twenty year history of treatment for depression. Both Dr. Gardner, upon whose opinion the ALJ relied, and Dr. Ehlert diagnosed dysthymic disorder and found Petitioner's psychological symptoms credible.

The ALJ noted inconsistent statements between Petitioner's testimony and what she had previously told physicians. The example used was Petitioner's report to one doctor she had injured her back while lifting a case of soda pop, but telling another doctor she had carried two

cases of oil. (AR 29.) However, an inconsistency of this nature is not generally the type of inconsistent statement that may be relied upon in discrediting a claimant's credibility. Rather, the type of inconsistent statement is whether or not a petitioner reported her symptoms, medical history, or ailments in a conflicting manner to her treating physicians. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing inconsistent information reported to physicians concerning drug and alcohol usage); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (stating that the ALJ may consider prior inconsistent statements concerning a claimant's symptoms). In reviewing the record as a whole, while Petitioner may not have reported the cause of her pain—whether it was a can of oil or a case of soda pop—in a consistent manner, Petitioner nonetheless reported she suffered from pain in her thoracic chest, lumbar spine, and knees, as well as headaches, to her physicians over a course of many years.

Based upon the evidence in the record as a whole, the ALJ's interpretation was not rational. The Court therefore finds there is not substantial evidence in the record to support the ALJ's finding that Petitioner was not fully credible.

**B. Lay Witness Testimony**

The second reason Petitioner cites as error is the ALJ's failure to consider the testimony of Petitioner's husband who testified at the hearing on December 5, 2006. Mr. Harpole testified that Petitioner suffered from headaches once a week and was incapacitated by pain for one or more days. (AR 436.) He testified that Petitioner generally "lays down and stays laid down most of the time." (*Id.*) He corroborated his wife's testimony about her daily activities, indicating that she "seems like she's always tired" and that he performs "a lot of things . . . around the house for her." (AR 452.) Mr. Harpole also witnessed several of his wife's seizures,

testifying that she sometimes has trouble with her speech, or that he finds her on the floor doubled over. (AR 453.)

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 885 (9th Cir. 2006). The ALJ is required to consider competent lay testimony, but in rejecting such evidence, he must only give reasons for doing so that are "germane to [the] witness." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511-512 (9th Cir. 2001).

In this case, the ALJ noted Mr. Harpole's testimony in his discussion of the evidence. (AR 29.) However, the ALJ failed to cite any reasons for specifically rejecting Mr. Harpole's testimony, which tended to corroborate Petitioner's testimony about her symptoms, their persistence, and their limiting effects. Although the Court could infer that the ALJ's discussion of the medical evidence meant he discredited Mr. Harpole's testimony, the ALJ did not specifically state he considered Mr. Harpole's testimony and rejected it because other evidence was contrary to Mr. Harpole's testimony. *See Lewis*, 236 F.3d at 511 (noting the ALJ specifically stated why he was rejecting lay witness testimony). Thus, the ALJ erred.[2]

**C. Remand for Award of Benefits**

Petitioner argues that, if she is found credible, the RFC determination relied upon by the ALJ is in error and the RFC determination that did account for Petitioner's subjective complaints

---

[2] Based upon the first two findings of error, the Court need not consider Petitioner's third argument that the ALJ erred in rejecting portions of Dr. Ehlert's opinion.

would preclude all work. Respondent contends that the evidence does not conclusively demonstrate her disability, and therefore a remand for an award of benefits is not appropriate. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (holding that remand for payment of benefits is appropriate when disability is established if the disputed evidence is fully credited). Alternatively, Respondent contends that if the ALJ is found to have erred, the appropriate remedy would be to remand the matter for further consideration.

Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). But, if the record has been developed fully and further administrative proceedings would serve no useful purpose, the court should remand for an immediate award of benefits. *Benecke*, 379 F.3d at 593 (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996); *Varney v. Sec'y of Health and Human Services*, 859 F.2d 1396, 1399 (9th Cir.1988)).

> More specifically, the . . . court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke*, 379 F.3d at 593 (citations omitted).

However, the Ninth Circuit Court of Appeals in *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003), held that the "crediting as true" doctrine is not mandatory. The court explained that it may remand to allow an ALJ to make specific credibility findings, and that the court has some flexibility in applying the "crediting as true" rule when there are insufficient findings as to whether a claimant's testimony should be credited as true. *Connett*, 340 F.3d at 876.

In *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009), the Ninth Circuit Court of Appeals acknowledged a split of authority within the Circuit over whether the credit-as-true rule is mandatory or discretionary. The *Vasquez* court declined to resolve the conflict, however, because it found there were outstanding issues that had to be resolved before a proper disability determination could be made in that case. *Vasquez*, 572 F.3d at 591. Specifically, there was conflicting testimony concerning the claimant's cognitive impairments and how those impairments might affect a determination of the claimant's RFC at steps four and five of the disability determination sequence. *Id.* at 597. Therefore, while the court applied the credit-as-true rule and required the ALJ to accept the claimant's testimony about her pain as true, the court remanded the matter for further consideration of steps four and five of the disability determination sequence. *Id*.

In this case, the Court finds the reasoning of *Vasquez* persuasive and concludes the credit-as-true rule should be applied, but that remand for a determination of the proper outcome at step five of the disability determination evaluation is appropriate.[3] The ALJ failed to review the record as a whole, choosing a myopic view of the record to conclude that Petitioner was less than fully credible about her pain when the records were consistent with her self-reports of pain and corroborated by other witnesses and medical practitioners who did not find her to be malingering. Petitioner's testimony, therefore, should be accepted as true in determining whether she is entitled to benefits.

Upon remand, the ALJ should consider the impact of Petitioner's testimony at step five.

---

[3] *Vasquez* also considered the petitioner's age and length of delay in processing the application. Similarly, Petitioner in this case is 54 years of age, and has been through two hearings before different ALJ's occasioned by the first ALJ's retirement.

At the hearing, Petitioner's attorney asked the Vocational Expert whether, accepting Petitioner's testimony as true, Petitioner could engage in her past relevant work. The Vocational Expert opined that Petitioner could not do so on a continuous, regular basis. (AR 475.) The ALJ rejected the Vocational Expert's conclusion because he found Petitioner not credible, and therefore found Petitioner could perform her past relevant work as a security guard and as a cashier. (AR 30.) The ALJ did not proceed to determine whether, at step five, Petitioner retained the capacity to make an adjustment to other work that exists in significant levels in the national economy, considering her residual functional capacity, age, education and work experience. Nor was the Vocational Expert questioned concerning whether Petitioner could adjust to other work, although it seems unlikely, given the Vocational Expert's opinion that Petitioner would miss significant amounts of work.

Nevertheless, there are insufficient facts presented that clearly indicate the proper outcome at step five of the disability determination evaluation. As in *Vasquez*, therefore, the Court will not find Petitioner disabled and order an immediate payment of benefits. *Vasquez,* 572 F.3d at 597 (stating that in cases where the testimony of the vocational expert has failed to address a claimant's limitations at steps four or five as established by improperly discredited evidence, the court consistently has remanded for further proceedings).

## V.
## Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence and is the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be remanded.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that**:

1) Plaintiff's Petition for Review (Docket No. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

UNITED STATES COURTS DISTRICT OF IDAHO

DATED: February 25, 2010

Honorable Candy W. Dale
Chief United States Magistrate Judge